[804 NE2d 392, 772 NYS2d 228]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AR-
THUR MILLS, Appellant.

Argued September 18, 2003; decided October 28, 2003

## POINTS OF COUNSEL

*Frank J. Nebush, Jr., Public Defender,* Utica (*Esther Cohen Lee* of counsel), for appellant. I. The charge in the indictment of murder in the second degree was used by the prosecution to circumvent the statute of limitations for the crime of criminally negligent homicide, for which defendant was convicted, and the trial court did not have jurisdiction to sentence defendant for that lesser offense, since the statute of limitations for that crime had run. (*People v Gulston,* 181 Misc 2d 644; *People v Di Pasquale,* 161 App Div 196; *People v Lohnes,* 76 Misc 2d 507; *People v Legacy,* 4 AD2d 453; *People v Soto,* 76 Misc 2d 491; *People v Dickson,* 133 AD2d 492; *People v O'Neil,* 107 Misc 2d 340; *Spaziano v Florida,* 468 US 447; *People v Simpson,* 175 AD2d 851; *People v Holliday,* 74 AD2d 993.) II. Since defendant's wife, Jane Mills, had asserted the marital privilege at the trial, and had vehemently insisted that she did not want to testify against her husband because she still loved him, and since the defense had objected to the introduction of her testimony on that ground, the wife should not have been forced by the prosecution and the court, upon pain of being held in contempt of court and jailed, to testify about admissions that her husband had allegedly made to her about this incident. (*People v Lifrieri,* 157 Misc 2d 598; *Poppe v Poppe,* 3 NY2d 312; *People v Melski,* 10 NY2d 78; *People v Dudley,* 24 NY2d 410; *People v Fields,* 38 AD2d 231; *People v Fediuk,* 66 NY2d 881; *People v Edwards,* 151 AD2d 987; *People v Branch,* 224 AD2d 926; *People v Naylor,* 120 AD2d 940; *People v Knapper,* 191 AD2d 207.) III. Since defendant's wife, Jane Mills, had informed the prosecutor that she did not wish to testify before the grand jury about admissions that her husband had allegedly made to her on the ground that they were protected by the marital privilege, the prosecutor did not have the right to force her, upon pain of being jailed, to testify without first seeking a court order. (*Matter of A & M,* 61 AD2d 426; *People v Easter,* 90 Misc 2d 748.) IV. When defendant's wife, Jane Mills, testified at the trial that she could not recall

the admissions that her husband had allegedly made to her in their bedroom, the prosecutor was not allowed to impeach that testimony by reading her testimony given at a pretrial hearing in the matter and asking her if she had given that testimony, since that procedure violated the rules established in CPL 60.35. (*People v Broadwater,* 116 AD2d 1022; *People v Estrada,* 142 AD2d 512.) V. Since there had been insufficient evidence produced at the trial to support defendant's conviction for criminally negligent homicide, the defense's motion to dismiss the indictment at the close of People's case should have been granted by the court. (*People v Haney,* 30 NY2d 328; *People v Boutin,* 75 NY2d 692.)

*Michael A. Arcuri, District Attorney,* Utica (*Carl J. Boykin* of counsel), for respondent. I. The People properly indicted defendant for murder in the second degree. (*People v Helliger,* 96 NY2d 462; *People v Boettcher,* 69 NY2d 174; *Fuller v United States,* 407 F2d 1199, 393 US 1120; *People v Dickson,* 133 AD2d 492; *People v Austin,* 63 App Div 382, 170 NY 585; *People v Blake,* 121 App Div 613, 193 NY 616; *People v Di Pasquale,* 161 App Div 196; *People v Legacy,* 4 AD2d 453; *People v Lohnes,* 76 Misc 2d 507; *Spaziano v Florida,* 468 US 447.) II. Defendant's threats to his wife were not "privileged" statements. (*People v Capobianco,* 218 AD2d 707, 86 NY2d 841; *People v Branch,* 224 AD2d 926, 87 NY2d 1017; *People v Fediuk,* 66 NY2d 881; *People v Dudley,* 24 NY2d 410.) III. The prosecutor properly informed defendant's wife of the possible result of her failure to comply with her grand jury subpoena. (*People v Wiggins,* 89 NY2d 872; *People v Natal,* 75 NY2d 379, 498 US 862; *Matter of Ferrara v Hynes,* 63 AD2d 675; *People v Johnson,* 275 AD2d 949, 95 NY2d 965; *Matter of Beach v Shanley,* 62 NY2d 241; *People v Ianniello,* 21 NY2d 418.) IV. The prosecutor's direct examination of defendant's wife comported with Criminal Procedure Law § 60.35. (*People v Tonge,* 93 NY2d 838; *People v Saez,* 69 NY2d 802; *People v Logan,* 261 AD2d 172, 93 NY2d 1003; *People v Fitzpatrick,* 40 NY2d 44; *People v Andujar,* 290 AD2d 654, 98 NY2d 648; *People v Roman,* 201 AD2d 933, 83 NY2d 914.) V. Sufficient evidence supported defendant's conviction for criminally negligent homicide. (*People v Bleakley,* 69 NY2d 490; *People v Contes,* 60 NY2d 620; *People v Carr-El,* 99 NY2d 546; *People v Ford,* 66 NY2d 428; *People v Haney,* 30 NY2d 328; *People v Boutin,* 75 NY2d 692; *People v Whitlatch,* 294 AD2d 909, 98 NY2d 703.)

272

**OPINION OF THE COURT**

GRAFFEO, J.

Defendant Arthur Mills was indicted in March 2000 for murder in the second degree (Penal Law § 125.25 [2] [depraved indifference murder]) in connection with his role in the 1978 drowning death of 12-year-old Raymond Umber. Although the drowning at Oneida Lake was originally determined to be an accident, a police investigation was instigated after defendant's wife and his brother each came forward and gave statements to the police implicating defendant.

In a pretrial motion, defendant requested that relevant lesser included offenses be submitted to the jury.[1] Noting that such motions are customarily addressed at the close of evidence, County Court nonetheless granted defendant's request to the extent that the trial evidence would support any lesser included charges. Because murder in the second degree (a class A-I felony) (*see* CPL 30.10 [2] [a]) has no statute of limitations, the court recognized that the passage of time between the crime and the indictment—more than 20 years—would become an issue only if defendant sought to have a lesser included offense that was subject to a limitations period submitted to the jury. The court therefore expressly conditioned its willingness to consider defendant's request to charge any lesser included offenses supported by the evidence upon defendant's "understanding that, if convicted of any lesser included offense, he has waived his objection on statute of limitation[s] grounds."

At the charge conference, defense counsel asked that the lesser included offense of criminally negligent homicide, a class E felony with a five-year statute of limitations (*see* Penal Law § 125.10; CPL 30.10 [2] [b]), be submitted to the jury.[2] The trial court reiterated its position that the request constituted a

---

**1.** CPL 300.50 provides, in part, that the trial court may submit lesser included offenses as an alternative to the highest offense in the indictment where there is "a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" (CPL 300.50 [1]). The statute further establishes that "[i]f the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so. In the absence of such a request, the court's failure to submit such offense does not constitute error" (CPL 300.50 [2]).

**2.** Defendant's pretrial motion included manslaughter, which is subject to a five-year statute of limitations, among the lesser included offenses he might request. At the close of proof, however, defense counsel requested only that criminally negligent homicide be submitted to the jury. Of course, the People could not have requested that the jury be charged with respect to any of the

waiver of any statute of limitations defense to the lesser included charge, indicating that it would not entertain a postverdict motion by defendant should the jury convict him of that offense. Defense counsel persisted in his charge-down request and stated that defendant reserved his right to appeal such a conviction on statute of limitations grounds. Consistent with its view of its obligations under CPL 300.50 and over the People's objection, the court instructed the jury to consider criminally negligent homicide as a lesser included offense of depraved indifference murder. The jury acquitted defendant of second-degree murder but convicted him of the lesser crime.

The trial court later denied defendant's motion to set aside the jury verdict and sentenced defendant to $1^{1}/_{3}$ to 4 years. Defendant has completed his term of incarceration and is presently under parole supervision.

On defendant's appeal, a divided Appellate Division affirmed the conviction, reasoning that defendant had waived his right to assert any statute of limitations defense when he asked the trial court to charge the jury on the lesser included offense of criminally negligent homicide. One of the two dissenting Justices who voted to reverse the conviction on statute of limitations grounds granted defendant leave to appeal.

Although the lesser included offense was charged to the jury at defendant's request, he now asks this Court to vacate the verdict. Defendant asserts that his conviction should be reversed and the indictment dismissed because the second-degree murder indictment was not supported by legally sufficient evidence. He contends that the prosecution overcharged him with depraved indifference murder in order to secure an indictment from the grand jury as a means of circumventing the five-year statute of limitations applicable to lesser degrees of homicide (*see* CPL 30.10 [2] [a], [b]).

The People respond that defendant's demand that the trial court provide the jury with the option of convicting him of criminally negligent homicide, while purporting to reserve his statute of limitations defense to that charge, placed the court in an untenable position given its statutory obligations under CPL 300.50 (2). The People emphasize that defendant obtained a substantial benefit by insisting on the charge-down—reducing his potential sentence exposure from 15 years to life to 1 to 4

lesser included offenses, including second-degree manslaughter, because they were time-barred.

years in prison (*see* Penal Law § 70.00)—and he should not be heard to complain about that benefit on appeal or permitted to manipulate the jury into exercising leniency.

New York courts have long recognized that the statute of limitations defense is not jurisdictional and can be forfeited or waived by a defendant (*see People v Kohut*, 30 NY2d 183, 191 [1972]; *People v Blake*, 193 NY 616 [1908], *affg* 121 App Div 613, 616-617 [1st Dept 1907]; *People v Dickson*, 133 AD2d 492, 495 [3d Dept 1987]; *People v Brady*, 257 App Div 1000, 1000 [2d Dept 1939]). Lesser included offenses may be submitted as an alternative to the greatest offense in the indictment "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. . . . Any error respecting such submission, however, is waived by the defendant unless he objects thereto before the jury retires to deliberate" (CPL 300.50 [1]; *see People v Ford*, 62 NY2d 275, 283 [1984]). "[B]y affirmatively requesting that the trial court submit the lesser charge to the jury, defendant waive[s] his right to challenge the submission of the lesser charge on appeal" (*People v Richardson*, 88 NY2d 1049, 1051 [1996], citing *People v Ford*, 62 NY2d at 283).

We hold that where an indictment is based on legally sufficient evidence defendant's statute of limitations defense is forfeited or waived by his request to charge the lesser included offense. This rule eliminates the danger of prosecutorial overcharging to circumvent the statute of limitations. Here the evidence before the grand jury was legally sufficient to support the depraved indifference charge.

A person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). Legally sufficient evidence is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged" (CPL 70.10 [1]). In the context of grand jury proceedings, "legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Bello*, 92 NY2d 523, 526 [1998]; *see People v Mayo*, 36 NY2d 1002, 1004 [1975]). Courts assessing the sufficiency of the evidence before a grand jury must evaluate "whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted—and deferring all questions as to the weight or quality of the evidence—would

warrant conviction" (*People v Carroll*, 93 NY2d 564, 568 [1999]; *see People v Swamp*, 84 NY2d 725, 730 [1995]).

Defendant's brother, the primary witness who appeared before the grand jury to relate the events surrounding Raymond Umber's death, testified that on the afternoon of July 7, 1978 he (then age 16) had accompanied defendant (then age 17) and three friends to the Sylvan Beach pier to go swimming. In order to access the pier, the group had to climb over a fence separating the beach area from the pier. As they were leaving the area, 12-year-old Umber was climbing the fence and walking toward the pier. Once defendant's brother climbed back over the fence, defendant was the only member of their group left on the pier side with Umber. At that point, defendant told his brother that he planned to "push the bastard in," referring to Umber, and then ran some distance down the pier to do so. Defendant's brother observed defendant push Umber from behind at about shoulder level and saw the victim fall to the pier, striking his head on the concrete before sliding into the water.

According to defendant's brother, when he and the others in the group saw or heard defendant push Umber into the water, they "yelled for him to help him, and then [defendant] went to me, he was swimming like in an under-water motion, and then he told us to run and we just took off." Based on this gesture, the group was "under the impression [the victim] was swimming," and, therefore, none of them attempted to help Umber or sought any assistance for him. As they were running to a friend's home, defendant shook his head, indicating to his brother that the victim was not, in fact, swimming, as defendant's earlier gesture had led him to believe. When the group arrived at the house, defendant's brother inquired if Umber was swimming, and defendant responded no. Defendant then threatened that if any of them reported the incident they would all go to jail because they were present at the scene. Defendant's brother and the other witnesses who testified before the grand jury explained that as a result of defendant's continuing threats and directions to keep silent none of the group alerted the authorities to the victim's plight.

This evidence, viewed in the light most favorable to the People, satisfies the threshold legal sufficiency standard (*see People v Bello*, 92 NY2d at 526). Defendant's act of pushing the young victim with enough force to cause him to hit his head on the concrete pier and then fall into the water and defendant's abandonment of the submerged victim, paired with the testi-

mony that defendant misled his friends regarding the victim's peril, discouraged them from offering assistance and subsequently threatened his friends into remaining silent once they learned the truth, establish a prima facie case of depraved indifference murder (*see People v Kibbe*, 35 NY2d 407 [1974], *writ of habeas corpus granted with conditions sub nom. Kibbe v Henderson*, 534 F2d 493 [1976], *revd* 431 US 145 [1977]).[3] Thus, defendant has failed to substantiate his allegation that the indictment was improperly obtained.

■ Defendant also contends that the trial court erred in admitting the testimony of his wife over his objection that his statements to her regarding the victim's death were protected by the marital privilege. This contention is meritless.

CPLR 4502 (b) provides that "[a] husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage." The privilege, which is "[d]esigned to protect and strengthen the marital bond, . . . encompasses only those statements that are 'confidential,' that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship" (*Poppe v Poppe*, 3 NY2d 312, 315 [1957], *rearg denied* 3 NY2d 941 [1957]; *see Matter of Vanderbilt [Rosner—Hickey]*, 57 NY2d 66, 73 [1982]). Communications or threats made during the course of physical abuse are not entitled to be cloaked in the privilege because the maker of the statement is not "relying upon any confidential relationship to preserve the secrecy of his acts and words" (*People v Dudley*, 24 NY2d 410, 415 [1969]; *see People v Patterson*, 39 NY2d 288, 304 [1976], *affd* 432 US 197 [1977]; *People v Edwards*, 151 AD2d 987, 987 [4th Dept 1989], *lv denied* 74 NY2d 808 [1989]).

Here, there is ample record support for the undisturbed finding of the trial court that defendant's statements to his wife were not confidential. Defendant's wife gave a statement to the police in which she described how defendant was choking and threatening her while he told her about the crime. During this episode, defendant stated that he was so mad that he could kill

---

**3.** Although depraved indifference murder often involves acts directed at a number of victims (*see e.g. People v Russell*, 91 NY2d 280 [1998]; *People v Gomez*, 65 NY2d 9 [1985]; *People v Fenner*, 61 NY2d 971 [1984]), we note that Penal Law § 125.25 (2) encompasses depraved indifference murder of a single victim (*see e.g. People v Best*, 85 NY2d 826 [1995]; *People v Kibbe*, 35 NY2d 407 [1974], *supra*; *People v Poplis*, 30 NY2d 85 [1972]).

her "just like he did with that kid." Under these circumstances, County Court properly concluded that defendant's inculpatory statements were not made in the context contemplated by the privilege (*see People v Edwards*, 151 AD2d at 987). We have reviewed defendant's remaining contentions related to his wife's testimony and conclude that they are meritless.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). Because defendant did not waive or forfeit his right to a defense based upon the statute of limitations, I dissent and would vacate defendant's conviction.

Defendant was indicted for depraved indifference murder in violation of Penal Law § 125.25 (2). He was found not guilty of that charge, however, and was convicted on the charge of criminally negligent homicide (Penal Law § 125.10). Defendant was sentenced to 1$^1$/$_3$ to 4 years in prison and he has served that sentence. The evidence was that in 1978, defendant, then 17 years old, pushed a boy 12 years old into water and cement in an area where defendant and some other youths had been swimming. The charges were not brought until 21 years later when the defendant's brother, angered that defendant was having an affair with the brother's wife, went to the police and an investigation resulted.

Defendant was convicted not of depraved indifference murder, but of criminally negligent homicide. Prior to trial, defendant, acting on the basis of an indication from the trial court that it would not consider a charge on a lesser included offense unless the defendant moved for it prior to trial, moved for a charge on the lesser included offenses of manslaughter and criminally negligent homicide. The People opposed the motion as premature. The court ruled that it would base the decision on the trial evidence. Following the trial, the defendant requested a charge on criminally negligent homicide as a lesser included offense of depraved indifference murder. Defendant did not request a charge on the lesser included offense of manslaughter in the second degree.[1] The trial judge requested that the defendant waive the statute of limitations for criminally negligent homi-

---

1. Neither the trial court nor the People noted or argued that the lesser included offense to depraved indifference murder (Penal Law § 125.25 [2]) was manslaughter in the second degree (Penal Law § 125.15 [1]) rather than criminally negligent homicide (Penal Law § 125.10). Penal Law § 125.25 (2) states, "A person is guilty of murder in the second degree when: . . . 2. Under circumstances evincing a depraved indifference to human life, he recklessly

cide. The defendant refused to do so but asserted that he was entitled to the charge. The court gave the charge as a lesser included offense and ruled that by requesting the charge, defendant waived his right to object to a conviction and sentence. Following trial, defendant moved pursuant to CPL 330.30 and 30.10 to set aside the conviction of criminally negligent homicide on the ground that it violated the statute of limitations. Defendant again asserted that he did not waive the statute of limitations. The trial court denied the motion.

On this appeal the prosecution contends that when the defendant requested the charge of criminally negligent homicide, he waived the defense of the statute of limitations. Defendant, however, specifically refused to waive the statute of limitations. Thus, no waiver with respect to the statute of limitations occurred. Moreover, there was no forfeiture, that is, a loss of a statutory right to assert the bar of the statute of limitations, merely by a request to charge a lesser included offense.[2]

If there was a reasonable view of the evidence that defendant committed the lesser crime, he was entitled to the instruction on criminally negligent homicide. CPL 300.50 (2) states that if the defendant requests a charge on a lesser included offense and if there is a reasonable view of the evidence that the defendant committed the lesser included offense but did not commit the greater offense, the court "must" give that charge. By contrast, a defendant who objects to the lesser included charge must so state before it is given or he or she waives the right to object to it being given (CPL 300.50 [1]). In *People v Richardson* (88 NY2d 1049 [1996]) and *People v Ford* (62 NY2d 275 [1984]),

---

engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." Penal Law § 125.15 (1), a lesser included offense of depraved indifference murder, states, "A person is guilty of manslaughter in the second degree when: 1. He recklessly causes the death of another person." Penal Law § 125.10, a lesser included offense of manslaughter, second degree, states, "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

2. Arguably, the trial court should have refused to give the charge on criminally negligent homicide without first giving a charge on manslaughter in the second degree. The court charged the jury that for it to convict defendant of murder in the second degree, the People had to prove that defendant engaged in reckless conduct indicating a depraved indifference to human life. A charge on the lesser included offense of manslaughter in the second degree would require the People to prove that defendant recklessly caused the death of another person. If the jury found the defendant not guilty of both murder in the second degree and manslaughter in the second degree, the charge of criminally negligent homicide would have been appropriate.

both cited by the majority for the proposition that defendant's conviction and sentence can stand because he has waived the statute of limitations in this case, the defendants argued that the charge on the lesser included offense should not have been given, but failed to object to the charge at trial. Because each defendant acquiesced in the charge when it was given, he waived objection to the charge and could not be heard to complain about his conviction of the lesser offense. Those cases do not address the issue currently before us, namely the effect of the statute of limitations on the conviction of and sentence upon the lesser included charge. Moreover, other cases cited by the majority (*People v Kohut*, 30 NY2d 183 [1972]; *People v Blake*, 193 NY 616 [1908], *affg* 121 App Div 613 [1st Dept 1907]; *People v Dickson*, 133 AD2d 492 [3d Dept 1987]) all stand for the proposition that a defendant waives the statute of limitations if he does not raise it at an appropriate time, an issue not before us.

It is clear that the evidence before the grand jury was sufficient to indict defendant for depraved indifference murder. At the same time, defendant was entitled to argue that the evidence was not sufficient to convict him of that offense but only of a lesser included offense, criminally negligent homicide. Once the defendant was convicted only of criminally negligent homicide, the statute of limitations precluded that conviction and the sentence imposed.

I agree with the majority that there is no validity to the defendant's contention that his wife could not testify against him because of the marital privilege. Defendant's confession to his wife was made during the course of his abuse of and threats to his wife. Therefore, the marital privilege did not apply.

Accordingly, I would reverse the conviction of the defendant.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT and READ concur with Judge GRAFFEO; Judge G.B. SMITH dissents and votes to reverse in a separate opinion.

Order affirmed.